[No. 8427.]

## JOHNSON V. ENGSTROM.

1. APPEAL AND ERROR—*Harmless Error.* Striking from the pleading an averment as to matter which is afterwards received in evidence is harmless. (33.)

2. PAYMENT—*Burden of Proof,* is upon the party alleging it. (33.)

3. EVIDENCE—*Weight to Be Accorded.* Positive testimony of a disinterested witness prevails against the mere lack of memory of a party to the controversy. (37.)

4. —— *Admissions—By Conduct.* Plaintiff had accepted from defendant certain shares of corporate stock, upon condition, as he contended, that defendant should execute his guarantee that the stock could be sold at par, within a specified period.

The guarantee was never executed, and in fact, was refused. Long after the maturity of the note, plaintiff demanded of the corporation, and received, a transfer of the shares to his own name; but it appearing that defendant was otherwise indebted, and that this action of plaintiff was taken in the fear that the stock might be attached by other creditors, and

merely to protect the security. *Held* plaintiff was not concluded by the action so taken; nor was his conduct evidence of any new agreement to accept the stock in satisfaction of the note. (38.)

5. CONTRACTS—*Condition.* One who executes and delivers a promissory note, the payee agreeing to surrender it upon a condition to be performed by the maker, is absolutely bound if he refuses to perform the condition. (37, 38.)

*Error to Denver District Court.* Hon. GEO. W. ALLEN, Judge.

Mr. HENRY HOWARD, Jr., and Mr. JOHN J. WHITE, for plaintiff in error.

Mr. WILLIAM V. HODGES, and Mr. D. EDGAR WILSON, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This is an action by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, to recover upon a promissory note in the sum of $4800, dated March 29th, 1911, payable thirty days after date, and executed by the defendant.

The answer admits the execution and delivery of the note, and pleads payment, the specific allegation being that prior to the commencement of the action, and on or about the 29th day of March, 1912, or shortly thereafter the defendant fully satisfied the plaintiff's claim and demand sued on in this action, by payment thereof.

The cause was tried to the court without a jury and judgment rendered for the defendant, and this proceeding is to review the findings and judgment of the court.

It appears that the defendant and one Beck, who at the time formed a partnership for that purpose, purchased the business of the plaintiff for the sum of $30,200. The partners were to be equal owners, and each was to satisfy the plaintiff for his one-half of $15,200, to be satisfied at the time, and the partners were to and did, execute their joint notes for the remaining part of the purchase price, $15,000,

in three notes of $5,000 each.   Beck paid his half of the immediate payment by his check in the sum of $7,600.   This controversy arises over the arrangement between the plaintiff and defendant as to payment by the latter of the sum of $7,600 which was to be paid by him at the time of the transaction.

It is agreed that the plaintiff accepted certain coal company stock, and fourteen shares of the capital stock of the Gronlund Sheep Company, of the par value of one hundred dollars per share, absolutely, leaving the remainder of $4800, which is the subject of the controversy.

It is contended by the defendant, that at the time of the transaction he was to transfer to the plaintiff absolutely, forty-eight shares of the stock of the sheep company in the discharge of the remaining $4800 of the sum so to be paid. But that it was discovered when the transaction was to be completed, that the certificate representing the forty-eight shares of such stock was in the name of a brother of the defendant, who lived in the state of Wyoming, where the sheep company operated, and that the certificate could not for such reason be assigned by the defendant.   That it was agreed that the defendant should take the stock certificate to Wyoming for endorsement, and that the promissory note was executed only for the purpose of securing the return of the certificate with the proper assignment.

The contention of the plaintiff, on the other hand, is that the note was given in payment of the $4800 due on the defendants first purchase payment, and that the stock was to be held by plaintiff only as collateral to secure its payment, but with the further agreement that plaintiff would accept the stock in payment of the note, conditioned upon the personal guarantee by the defendant that it could be sold within one year for its par value.   At the time of the execution of the note there was written on the back of it the following:

"It is hereby agreed between John T. Johnson and John Engstrom the parties to the within note that said note may be satisfied by the tender of forty-eight shares of he Gronlund Sheep Company stock a Wyoming corporation duly endorsed by the owner thereof to said Johnson or the holder of this note; provided that said stock is accompanied by the personal guarantee of said Engstrom that said stock can be sold at par within a year. (Signed) John T. Johnson."

This endorsement was fully set out in the complaint but upon motion of defendant was stricken from the pleading. This is assigned as error.

However, the endorsement was offered in evidence by the defendant and considered by the court; the theory of the plaintiff being that the payment of the note was subject to the condition named in the endorsement, that it should be pleaded, together with a failure or refusal of the defendant to comply therewith, to justify recovery. Inasmuch as the defendant introduced this condition in evidence, and the plaintiff pleaded it, the error, if it was error, to strike it from the pleading, is not material.

The execution of the note being admitted, and the plea of payment and satisfaction being alleged as a defense, the burden rested with the defendant to prove such satisfaction and payment. This is the only issue in the case.

There is conflict in the testimony of plaintiff and defendant upon the point, with the circumstances admitted, and the testimony of Mr. Haines left to determine the truth as between them. Singularly enough, the plaintiff, the defendant and the court, place strong reliance upon the testimony of Mr. Haines, which of itself appears to fully justify such confidence. Mr. Haines was the attorney who transacted all the business between the parties. He drew the note in question and the endorsement thereon, and was fortified in his testimony by memoranda which he made at the time, and from which he prepared the written instruments.

Then, with such unanimous agreement upon the part of the litigants, and the trial court, as to the reliability of the testimony of Mr. Haines, it is well to consider such testimony carefully, as related to the disputed question of fact between plaintiff and defendant, and particularly in view of the fact that no other witness, aside from the plaintiff and defendant, seems to throw any light upon the subject. Mr. Haines testified as follows:

"A.    I was called down there by Mr. Beck, not knowing what the transaction was.   When I arrived there, I was introduced to Mr. Engstrom and Mr. Johnson, and the three parties together told me of the deal that they were making, and the terms. Mr. Beck, I remember, did most of the talking, Mr. Engstrom and Mr. Johnson doing but little, occasionally making suggestions.   They told me that Beck and Engstrom were forming a partnership to purchase the saloon and wholesale liquor business and rooming house business from Mr. Johnson, that was being conducted in that building, and all the personal property and fixtures used in connection with it; that the purchase price was $30,200, to be paid $15,200 in cash, or by property delivered at that time, taken as cash, and $15,000 to be represented by three notes for $5,000 each, signed by Mr. Beck and Mr. Engstrom.   *   *   *

A.    When the stock was examined, it was found that there was some irregularity—I don't recall what that irregularity was, whether it was in the form of the endorsement or what it may have been, but Mr. Engstrom assured Mr. Johnson that he could fix it up within a few days—that he would have to send the stock off to get some signature to it, as I recall; and then the question arose as to whether the deal could be closed on that day or not.  All the parties were anxious to close up the deal at once, and let the purchasers take possession, I believe the following day, or the next day after that.   I then suggested to them that Mr. Engstrom

could give his note to Mr. Johnson for the amount that was to be represented by the stock, with an endorsement on the back that upon the delivery of the stock it should be taken in payment of the note. Their agreement had been at all times, that when this stock was delivered by Mr. Johnson— by Mr. Engstrom to Mr. Johnson, it should be accompanied by a guarantee that the stock could be sold at par within a year. The fact that the stock could not be delivered immediately was not to affect the conditions. I explained to both parties the nature and purpose of the note, that it was to protect Mr. Johnson in case he did not receive the stock properly endorsed with the guarantee. It was anticipated at that time, as was stated by Mr. Engstrom, that the stock would be returned to him within a week, at least, properly endorsed, and that he would then deliver the stock to Mr. Johnson, and Mr. Johnson would surrender the note to him. That is the transaction, as well as I can remember it, and I think I am accurate in all those details. I made a pencil memorandum of the transaction at the time, and went to my office and drew a bill of sale, and the partnership agreement between Beck and Engstrom, and the notes for the transaction, all except the note which I hold in my hand, marked Exhibit "A." That was not drawn until I returned to their place of business, and we had the conversation to which I have already testified.

Q. Now, after this conversation, you wrote this guarantee of endorsement on the back of the note, did you? A. I wrote that on the back, after explaining to Mr. Johnson and Mr. Engstrom and Mr. Beck.

Q. Now, Mr. Haines, after the conversation you have just detailed, you wrote this memorandum, or guarantee, on the back of the note? A. I wrote the face of the note, and the memorandum on the back of it.

Q. That was after the conversation, though? A. It was.

Q. And that expressed the agreement of the parties, did it? A. It did."

The defendant testified that he did not remember any writing on the back of the note, and upon cross examination testified as follows:

"Q. You heard Mr. Haines' testimony? A. Yes.

Q. And you heard him talking—he said you talked this over? A. I heard him.

Q. Was that so? A. No, not all of it, as I remember.

Q. Well, what is it you remember Mr. Haines talking over? A. I didn't guarantee—

Q. I don't want your conclusion. I want to know what you said, and what Mr. Haines said? A. I forget.

Q. I want to know what Mr. Haines said, and what you said? A. I don't remember what he said.

Q. You don't remember anything he said? A. Not right now, I don't.

Q. Well, just take your time and think of some one thing Mr. Haines said there? A. He said to take the shares of stock and have it signed by my brother—the forty-eight shares, if I remember.

Q. Anything else you remember Mr. Haines said? A. No, I don't remember. I forget pretty quick.

Q. Did you ever give Mr. Johnson a writing, besides this note, in reference to this stock? A. No."

He further testified that he told plaintiff that the sheep were worth dollar for dollar; that this was true at the time; that he would like to buy them back again in a year; that he procured the certificate to be signed by his brother; that he left it with Johnson in about three weeks after the note was signed; that he just handed the certificate to plaintiff, and asked to take up the note, but had no discussion concerning it.

No where in this or other testimony, does the defendant deny that he agreed to the condition, or that it was written

by the attorney and signed by the plaintiff in his presence, and with his consent. He says that he don't remember, that he forgets. Such testimony is of little or no value, and as against the clear, positive testimony of Haines, cannot be considered.

This is the only testimony in the case that may in any manner be said to be in conflict with that of the plaintiff and Mr. Haines, upon the question of the condition upon which the note was given. It is a significant fact that the note sued on, remained in possession of the plaintiff until offered in evidence at the trial.

The court, in its findings, seems to fully rely on the testimony of Mr. Haines, for he says of it:

"The way that transaction occurred is a strong corroboration of the theory of the defendant in this case; but even without those earmarks, Mr. Haines' testimony is so accurate—he set it in writing—he is so clear, that there appears to be no mistake about it."

So that this is not a case wherein the rule that the trial judge having the witness before him, is the better enabled to judge of his credibility.

Nothing is clearer than that the condition written on the back of the note, that the stock was to be accepted by the plaintiff only when accompanied by the personal guarantee of the defendant that it could be sold at par within a year, was written in the presence and by the consent and agreement of the defendant. Clearly then, he is bound by that condition and agreement.

It is not disputed that the plaintiff repeatedly demanded and was refused such guarantee by the defendant. The plaintiff alleged and proved a tender of the forty-eight shares of the stock of the Sheep Company, and made the tender good in court.

Under the state of facts appearing, the plaintiff was entitled to recover upon the note. The date of the note sued

on, was March 29th, 1911. It was due thirty days there-after. It appears that on the 29th day of March, 1912, or eleven months after the maturity of the note, the plaintiff asked for and received a transfer by the Sheep Company, of the fourteen shares accepted absolutely in the transaction, and the forty-eight shares now in question, in his own name, and this fact, it is contended, is strongly corroborative of the defendants contention that the shares were accepted abso-lutely by the plaintiff. But this action is explained by the testimony of the plaintiff and his attorney, saying that such action was taken upon the advice of the attorney, after learning that there were other creditors of the defendant, and that the stock might be levied on by such creditors if remaining in the name of defendant, and that the purpose was to protect the security, and not to lay claim to owner-ship.

When we consider that the note was at the time, eleven months over due, and that the defendant had refused to comply with his guaranty agreement, this act does not appear to be inconsistent with the plaintiff's contention. Certainly it is not sufficient to constitute a new agreement, other and different, from that expressed in the note and memoranda written thereon, so clearly established.

The defense in this case was payment. It was the sole issue and the court held that "The burden is upon the plain-tiff. The plaintiff must maintain his case if at all, by a preponderance of the evidence." This was error. The burden of proving payment is upon the party alleging it. 30 Cyc. 1264; *Thomas v. Carey*, 26 Colo. 485, 58 Pac. 1093.

The condition under which the note was executed was binding on both parties. It cannot be doubted that if the defendant had, prior to the maturity of the note, tendered to the plaintiff certificates of stock in the Sheep Company accompanied by the stipulated guarantee, the plaintiff would have been bound to accept the same in full payment and

discharge of the note.  Having repudiated the condition the defendant must comply with the absolute promise.

The judgment is reversed with instruction to enter judgment on the note.

GABBERT, C. J., and TELLER, J., concur.