**SCHULTE TRANSPORTATION COMPANY,**

Inc., a Corporation (Plaintiff),
Respondent,

v.

Darrell W. HEWITT and M. Mabel Hewitt

(Defendants), Appellants.

No. 29669.

St. Louis Court of Appeals.
Missouri.

Feb. 28, 1957.

Motion for Rehearing or for Transfer
to Supreme Court Denied
March 29, 1957.

Dearing, Richeson & Weir, Will B. Dearing, Hillsboro, for appellants.

Ennis & Pannell, William L. Pannell, Festus, for respondent.

HOUSER, Commissioner.

This is a suit on a promissory note brought by Schulte Transportation Company, Inc., endorsee, against accommodation co-makers Darrell W. Hewitt and M. Mabel Hewitt. The cause was tried by the court sitting as a jury. Defendants appeal from a judgment for plaintiff for $4,000 principal, plus interest and attorneys' fees.

The petition alleged the execution of the note, endorsement to plaintiff before maturity and for value, demand and failure to pay. The answer denied that the paper was a negotiable promissory note, denied legal delivery and alleged that by the terms of a contract between plaintiff and the principal maker the note was not to become valid and binding except upon a condition which never occurred, and "that whatever consideration, if any, as alleged by plaintiff to have passed for the signing of said note thereby failed." No reply was filed.

W. H. Schulte owned a bus line incorporated under the name of Schulte Transportation Company, Inc., operating under Certificate of Convenience and Necessity No. 393 issued by the Public Service Commission of Missouri. Hereafter we will refer to "the bus company," "No. 393" and "the commission." In 1951 Schulte sold the stock of the bus company to Charles Porter and John Hartshorn and wives. The purchasers made a down payment and executed a promissory note to W. H. Schulte for the balance of the purchase price.

Arthur Santee, d/b/a Inter-City Bus Lines, operated another bus line under the authority of Certificate of Convenience and Necessity No. 491. (Hereafter "No. 491".)

Negotiations in 1952 led to the execution of a written contract dated September 13, 1952 between the bus company and Arthur Santee for the sale of the authority, rolling stock and equipment of the bus company for the sum of $18,500. A $5,000 cash down payment had been agreed upon but on the day the contract was drawn Santee did not have the cash. It was agreed that instead of cash Santee would give a $4,000 installment note signed by Arthur Santee and wife as principal makers, with defendants Hewitt and Santee's brother Joe as accommodation co-makers. The balance of the purchase price was to be given in the form of two other installment notes to be signed by Arthur Santee and wife and Santee's brother Joe, one for $8,000 secured by a chattel mortgage on the equipment, and one for $6,500. The contract contained the following provisions:

"It is agreed by Arthur Santee that in the event the certificate of convenience and necessity is transferred by the Public Service Commission of Missouri, and this contract fully consummated, that the rolling stock will be kept in good condition and the business be kept in a sound financial condition, and in the event of his failure to do so that the notes described herein will be thereby matured, and immediately due and payable. Failure on the part of the said Arthur Santee to perform any of the conditions herein mentioned, shall terminate the contract and mature the notes, described herein.

"It is further understood and agreed that the within contract will be valid and binding on the parties only in the event that the Public Service Commission sustain the motion to transfer the authority described in certificate No. 393.

"It is further agreed between the parties that a joint motion will be filed with the Public Service Commission seeking transfer of the authority contained in certificate No. 393, and that all parties to the contract will use their best efforts looking toward the transfer of said authority, pursuant to the terms of this contract."

The contract further provided that Santee take over the operation of the bus line on September 15, 1952 and furnish transportation to the public until the contract was consummated by the execution and delivery of the notes, the assignment of title to the rolling stock, the application for transfer of authority and the execution and delivery of a bill of sale of the parts and equipment. On September 15, 1952 the $4,000 note in suit was executed pursuant to the written agreement. The Hewitts agreed to and did sign the note as accommodation co-makers after having been informed that under the contract they would not be liable thereon unless the transfer of authority to operate the bus line was approved by the commission. Nothing was paid to the Hewitts for signing the note. The note was made payable not to the bus company but to W. H. Schulte on the understanding that when the transaction, including the transfer of No. 393, was completed the note would be credited on the "master note" signed by the Porters and Hartshorns and held by W. H. Schulte.

Santee took over the operation of the bus line on September 15, 1952 and began running the schedules and collecting the fares. At that time the bus company had on file with the commission the required liability insurance policy. Santee operated the bus line on this policy for 30 or 60 days. During October or the first part of November, 1952 Charles Porter, president of the bus company, was notified by Travelers Insurance Company that No. 393 had been suspended by the commission on the ground that the insurance company had canceled the policy which had been filed with the commission by Schulte. Porter talked to Santee and Schulte about the matter, both of whom went to St. Louis and there talked

with a representative of Travelers Insurance Company. As a result of that discussion the insurance company agreed that upon payment of $500 the policy would be reinstated for a limited period, 60 or 90 days, to give Santee an opportunity to procure insurance elsewhere. Santee paid $500 in cash to the insurance company and the policy was reinstated. When the policy was reinstated No. 393 was reinstated.

Santee did nothing about the transfer of No. 393 from September 13 until the end of October or the early part of November, 1952. Santee then gave J. W. Thurman, an attorney, the information from which Thurman prepared and on November 5, 1952 forwarded to the commission a joint motion of the bus company and Santee for the transfer to Santee of the authority then held by the bus company to operate the line under No. 393. Upon receipt of the joint motion for the transfer of No. 393 the commission received but did not file it. Commission counsel indicated that the procedure was wrong. The commission would not act except upon a motion to consolidate and merge No. 393 with No. 491. Commission counsel inquired what Santee wanted to do with No. 491; whether Thurman should not ask for a consolidation of No. 393 with No. 491, and suggested that procedure. Thurman conferred with Santee and on November 15 advised the commission by mail that Santee desired to make the suggested consolidation. Thurman sought and received permission to have his letter considered as an amendment of the motion for transfer to a motion for consolidation, without the filing of a formal amended motion. Commission counsel informed Thurman that No. 491 had been under suspension since June 4, 1952 for failure of Santee to keep on file proper insurance; ` that before there could be any merger with No. 491 it would be necessary that No. 491 be reinstated. In order to effect such reinstatement it was necessary to file a proper insurance policy. This Santee had not done. When this was brought to his attention Santee produced a policy of insurance issued by National Indemnity Company covering Santee's operation under No. 491 for the period June 13, 1952 to June 13, 1953. The policy forwarded to the commission on November 21, was returned shortly there· after for the reason that it had been canceled on September 28, 1952. Commission counsel advised Santee's attorney as follows: "Please have your applicant furnish this Commission a duplicate original policy of insurance which is currently in effect to cover his operations under Certificate No. 491 *in order that the suspension may be lifted and the proposed transfer and merger may be referred to the Commission.*" (Our italics.) Santee made no further effort to furnish an insurance policy to the commission in order to lift the suspension on No. 491. On December 24, 1952 the commission made an order revoking the authority under No. 491 "for failure to keep on file proper insurance, and while under suspension, engaging in the business of a common carrier by motor vehicle in violation of the law and the rules and regulations of this Commission."

The joint motion received November 6, 1952 was finally filed January 6, 1953 and denied on January 14. The order of the commission denying the joint motion to transfer No. 393 to Santee recited the fact that Santee desired to consolidate and merge No. 393 with No. 491; that Santee had failed to remove the suspension of No. 491 by filing proper insurance and the fact of and reasons for the revocation of No. 491, as above set forth; found that No. 393 could not be merged with No. 491 because the latter had been revoked, and found that "Arthur Santee, because of his violation of the law and the rules and regulations of this Commission, herein·above referred to, is not a proper person to operate as a common carrier by motor vehicle of passengers for hire, and that the motion should be denied."

Following the action of the commission on January 14 Santee quit operating the bus line. On January 16 Santee,

572

through his then attorney, Jesse Bishop, notified the bus company and W. H. Schulte that he rescinded the contract of September 13 on the ground that the condition of transfer of No. 393 could not be met, offered to turn back all of the rolling stock and equipment of the bus line and sought cancellation of the notes and mortgage. At a later but undisclosed date Santee returned the buses to the bus company. When that occurred W. H. Schulte endorsed the notes given under the contract of September 13, including the note in suit, to the bus company. The consideration for this transfer was the elimination of the credit of $4,000 previously given by W. H. Schulte on the master note signed by the Porters and Hartshorns. On February 17, 1953 Arthur Santee filed suit against the bus company in the Circuit Court of the City of St. Louis to cancel the notes given under the contract. A plea to the jurisdiction was sustained and the cause was dismissed. The bus company received the buses when returned by Santee and about mid-year in 1953 the bus company sold the same physical assets returned by Santee to a man by the name of Buff for the sum of $15,000, according to the president of the bus company. Following demand and refusal to pay the $4,000 note the instant suit was filed.

Defendants-appellants deny liability on this note, contending that plaintiff was not a holder in due course; that there was no valid delivery, in that the note was given on a condition which did not occur (the approval by the commission of the transfer of No. 393) and that the note was given without consideration; that plaintiff accepted the note with knowledge of these facts.

■ Plaintiff, whose principal officer had full knowledge of the collateral contract under which the note in question was given, and of all the facts relating to the defenses asserted, was not a holder in due course. Accordingly, as between the parties plaintiff and defendant the defenses

of conditional delivery, Moore v. Leach, Mo.App., 14 S.W.2d 21; Earle v. Woodruff, Mo.App., 274 S.W. 107, and lack of consideration, Republic State Bank v. McDaniel, Mo.App., 290 S.W. 449; Wohlschlaeger v. Dorsey, Mo.App., 206 S.W.2d 677, could be asserted.

The written contract of September 13 and the promissory notes signed two days later constitute the contract of the parties and must be read together. National Refining Co. v. Zuckerman, Mo.App., 183 S.W.2d 390; Trautman v. Schroeder, 230 Mo.App. 985, 93 S.W.2d 303; Williams v. Kessler, Mo.App., 295 S.W. 482. Thus considered it is indisputable that the note in suit was given on a condition, namely, that it would not become effective unless the commission authorized the transfer of the authority contained in No. 393 from vendor to vendee. There is no doubt that the condition was never fulfilled. The sale and transfer of the bus line could not be consummated because the application for the transfer of No. 393 and consolidation of Nos. 393 and 491 was denied. Conceding this, plaintiff-respondent yet seeks to enforce the note on the ground that the performance of the condition was excused by the wrongful acts, misrepresentations and omissions of Arthur Santee which alone prevented the performance or happening of the condition, and that the condition was not prevented from occurring by any act or omission of plaintiff.

■■ By its express terms the contract was to be valid and binding only in the event that the commission "sustained the motion to transfer the authority described in Certificate No. 393," and the parties agreed that a joint motion would be filed with the commission "seeking transfer of the authority contained in Certificate No. 393, and that all parties to the contract will use their best efforts looking toward the transfer of said authority." Pursuant to this contractual obligation Santee employed an attorney who prepared and filed an application with the commission. The

attorney made two trips to Jefferson City and wrote several letters to the commission in an effort to effect the transfer. Upon learning that No. 393 had been suspended for lapse of insurance Santee made a trip to St. Louis, conferred with the insurance company representative and paid $500 to effect a reinstatement of the policy and certificate. To this extent Santee performed his contractual obligation. In another important respect, however, he failed. In the administration of Chapter 390 RSMo 1949, V.A.M.S. relating to motor carriers the commission required a merger or consolidation of certificates of convenience and necessity in the case of a transfer of a certificate to the holder of another such certificate. This requirement, which is not in excess of its authority. State ex rel. Gehrs v. Public Service Commission of Missouri, 232 Mo.App. 1018, 114 S.W. 2d 161, the commission had a right to make. It became a part of the contract. Accordingly, Santee was obligated to use his best efforts to effect a merger or consolidation of Nos. 393 and 491. Santee and his attorney recognized this as a part of his obligation and acknowledged the duty of complying with this procedural requirement. No. 491 had been suspended since June 28, 1952 for failure to keep proper insurance on file. Santee was required to file a proper insurance policy in order to lift the suspension of No. 491, but he took no effective action in that direction. He did nothing except to forward a canceled, void policy to the commission. When the commission returned the canceled policy with a request for a policy "currently in effect" Santee permitted more than a month to pass without taking any further action. As a consequence No. 491 was revoked. In addition to this act of omission Santee was guilty of conduct which has been held a misdemeanor, § 390.171 RSMo 1949, V.A. M.S.; Trinity Universal Ins. Co. v. Cunningham, 8 Cir., 107 F.2d 857, in that during the period June 28–December 24, 1952, in violation of the commission's rules and regulations and of § 390.176 RSMo. 1949,

V.A.M.S., he continued to operate a bus line the certificate of convenience and necessity of which had been suspended. These acts of omission and commission resulted in the finding by the commission on January 14, 1953 that Santee "is not a proper person to operate as a common carrier by motor vehicle of passengers for hire" and it was on this basis that the joint motion was denied. Thus it clearly appears that Santee violated his contractual obligation aforesaid, disqualified himself from commission approval, and hindered and prevented, instead of helping to effect, the fulfillment of the condition.

It is a well established principle that if a promisor prevents or hinders the occurrence, happening or fulfillment of a condition in a contract, and the condition would have occurred or happened or would have been fulfilled except for such hindrance or prevention by the promisor, then the performance of the condition is excused and the liability of the promisor is fixed regardless of failure to fulfill the condition. Vandemal v. Dougherty, 17 Mo. 277; Clark v. Condit, 11 Mo. 79; McClure v. Wilson, 238 Mo.App. 824, 185 S.W.2d 878, loc. cit. 883; Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920, loc. cit. 924; Coastal Oil Co. v. Eastern Tankers Seaways Corp., 29 N.J.Super. 565, 103 A.2d 26; Vanadium Corp. of America v. Fidelity & Deposit Co., 2 Cir., 159 F. 2d 105; Johnson v. Engstrom, 61 Colo. 30, 155 P. 1095, loc. cit. 1098; Bewick v. Mecham, 26 Cal.2d 92, 156 P.2d 757, 157 A.L.R. 1277, loc. cit. 1284; George W. Garig Transfer v. Harris, 1954, 226 La. 117, 75 So.2d 28; Restatement, Contracts, §§ 294, 295; Williston on Contracts, Rev. Ed., Vol. 3, § 677, p. 1952; Corbin on Contracts, Vol. 3, § 767, pp. 950, 951; 12 Am. Jur., Contracts, § 329, p. 885; 17 C.J.S., Contracts, § 468 a, p. 966, § 468 b, p. 969.

In George W. Garig Transfer v. Harris, supra, plaintiff transfer company sued to be declared owner of a public service

commission certificate authorizing motor freight service. Plaintiff and defendant had contracted to sell the certificate to plaintiff for $4,000 cash. It was agreed that $4,000 be placed in escrow in a bank with instructions that upon approval of the transfer of the certificate by the commission (to be sought by a joint petition to that body) the money should be paid to the seller and the contract of sale delivered to the purchaser, but if the commission should deny the transfer the contract was to be returned to the seller and the consideration returned to the purchaser. A joint petition was filed but the defendant later filed a written motion stating his desire to withdraw from the joint petition and to have the matter dismissed. The commission ruled that on account of plaintiff's ability to render the necessary service the transfer would have to be approved but that it was without power to prevent the withdrawal of the application by the defendant, and continued the matter without prejudice, whereupon these proceedings were instituted. In affirming a judgment for plaintiff the Supreme Court of Louisiana said, 75 So.2d loc. cit. 32:

"We are also in full accord with the trial judge's view that the escrow agreement was a binding obligation on both parties, under the Civil Law. True, it contained a suspensive condition, but * * * the condition is considered as accomplished when the debtor, bound under that condition, has prevented its accomplishment. * * * '* * * the law does not permit the party whose obligation depends on a condition, to allege the non-performance of that condition in defence, where it was through his fault it was not performed'. * * * 'no man can take advantage of his own wrong, and the law has been careful to make a special application of this maxim to cases where conditions form part of the contract. Coke on Littleton, 221–22. Digest, liv. 45, tit. 1, law 89. Pothier on Obligations, no. 212.' [Walls v. Smith], 3 La. [498], at pages 502 and 501. Clearly, under the facts of this case, the defendant was without legal or moral right to withdraw from the joint application to secure the transfer from the Public Service Commission, and, by withdrawing, has brought about the failure to receive the approving Order of the Commission, since it is clearly stated in the ruling of that body that but for the withdrawal of the defendant, the transfer would have been approved."

In Coastal Oil Co. v. Eastern Tankers Seaways Corp., supra, a suit by the vendor against the vendee arising out of a written contract for the sale of a tanker, the vendee asserted as a defense the contract provision that if the approval of the proposed sale and transfer by the Maritime Commission was not obtained the contract might be terminated. Plaintiff, however, pleaded that defendant itself made it impossible for the commission to give its approval to the proposed sale because, in breach of its express warranty, it was not a citizen of the United States and had not met the operational and financial requirements of the commission, so that defendant's failure to obtain the approval of the commission was brought about by defendant's own default and breach of its covenants and warranties. Under the rule of hindrance or prevention the court held that there was a genuine disputed factual issue requiring consideration by a jury, and an order for summary judgment was reversed.

In Vanadium Corp. of America v. Fidelity & Deposit Co., supra, plaintiff, vendee in a contract for the sale of mining leases covering lands belonging to Indians, brought an action against the surety on a bond securing performance of the contract. The contract provided for repayment of the purchase price if the sale was not approved by the Secretary of Interior. It was held to have been the duty of the plaintiff in good faith to seek the approval

of the secretary and that whether plaintiff failed to cooperate, withdrew its request for approval and prevented reconsideration of disapproval, and whether defendant's contractual duty under the contract was discharged by plaintiff's breach of a condition precedent, were questions for the jury.

The condition on which the defense of non-delivery is predicated having been excused under the doctrine of prevention or hindrance, the defense of non-delivery must fail. The principal maker, Santee, could not have asserted the defense. An accommodation maker is primarily liable to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party, § 401.029 RSMo 1949, V. A.M.S.; Morrison v. Painter, Mo:App., 170 S.W.2d 965; Merchants' & Miners' Bank v. Hille, Mo.App., 275 S.W. 560. The duty of the accommodation maker to a holder for value is no greater or less than or different from that imposed upon a maker who received value. 11 C.J.S., Bills and Notes, § 739, p. 290. It follows that as to defendants Hewitt the defense of non-delivery fails.

The second defense relied upon, lack of consideration, i. e., that there was neither benefit to the maker nor detriment to the payee, must be disallowed. There is no necessity of consideration moving to accommodation parties on negotiable paper, where consideration moves to the party accommodated. First National Bank of Hamilton v. Fulton, Mo.App., 28 S.W. 2d 368; 7 Am.Jur., Bills and Notes, § 251, p. 948. Without question there was adequate consideration passing to the latter in the transfer of the bus line and equipment and the use of the physical assets whereby Santee was enabled to operate the bus line, maintain its schedules, collect the fares and enjoy the revenues therefrom for a period of approximately four months.

On the issues framed by the pleadings and actually tried your Commissioner finds

no error on the part of the circuit court. Accordingly, it is recommended that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., RUDDY, J., and GEORGE P. ADAMS, Special Judge, concur.