S.A. Harvey, a licensed real estate agent, is seeking to recover from Ulysses J.L. Riedlinger $175, with interest at 8%, together with attorney's fees at 25%, and court costs. He contends that he is entitled to a commission at 5% on the sale price of a piece of real estate formerly owned by Riedlinger and sold to J.D. Jones.
Defendant admits that he sold the property to Jones through other agents, but asserts that he did so only after he had terminated the exclusive agency contract which he had formerly had with Harvey, and that Harvey, during the term of the contract, did not negotiate with Jones, had not submitted it to him, and was in no way responsible for the sale.
From a judgment for Harvey for $175, with 8% interest and costs and for an attorney's fee of 25% of the total amount, Riedlinger has appealed.
On July 20th, 1942, Riedlinger, by written contract, employed Harvey as his exclusive agent to sell the property in question, and agreed to pay a commission of 5% on the sale price should a sale result. He also agreed to pay 8% interest on any such commission, the payment of which might be delayed and an attorney's fee of 25% should the services of an attorney be required to collect the commission.
Riedlinger further agreed "not to interfere with the sale of said property" during the term of the contract and "to refer all applicants for the purchase of said property" to Harvey.
The term during which the contract was to remain in force is of great importance, and we quote therefore the provisions concerning that term:
"* * * This Authorization to be binding at all times unless revoked by one hundred and eighty days written notice by registered mail. If this property is sold within 180 days after termination of this Contract to any person or persons to who S.A. Harvey may have submitted the property directly or indirectly, while this contract was in force, the commission shall be paid S.A. Harvey no matter by whom said sale is made."
As we have said, the contract was dated July 20th, 1942. Under date of November 3rd, 1942, Riedlinger, by registered mail, advised Harvey that he desired to terminate the contract.
On the next day, November 4th, 1942, Harvey acknowledged receipt of the notice of cancellation, and, in writing, advised Riedlinger that he would "continue to advertise * * * and make every effort to sell the house and lot as early as possible."
On April 8th, 1943, James D. Jones, through other real estate agents, made a written offer to purchase the property, and on April 10th, 1943, this offer was accepted *Page 61 
in writing by Riedlinger. The required deposit was made on that date by Jones. This offer of Jones, which Riedlinger accepted, contained a stipulation to pay $3,500 for the property, and provided that payment would be made in the following manner:
"* * * $1000.00 Cash (One Thousand Dollars) Balance subject to Homestead Terms."
Harvey had not submitted the property to Jones, and he was not instrumental in negotiating the sale.
Jones made application to a local homestead association for the necessary loan but this first application was rejected.
On April 28th, 1943, Jones again applied for the necessary loan; this time to Commonwealth Homestead Association. This application was approved. The Homestead Association requested an appraisal from the Central Appraisal Bureau, and the agreement to make the loan was based on the fact that this Bureau appraised the property at a sufficient amount to justify the loan. This sufficient appraisal was made on April 30th, 1943.
On May 5th, 1943, the attorneys for the Homestead Association were requested to make the necessary title examination, and several weeks thereafter the title was transferred from Riedlinger to Jones.
It is the contention of Harvey that although the sale to Jones was made after he had been advised by Riedlinger of his desire to terminate the contract, it nevertheless was made within the period of 180 days following receipt of that notice, and that therefore under the terms of the contract he was entitled to the full commission. In other words, he maintains that the contract as originally written, was for an indefinite time and that Riedlinger was given the right to terminate it only at the expiration of the 180 days from the giving of notice of intention to terminate.
One of the contentions of Riedlinger on the other hand is that the contract, if properly interpreted, reserved to him the right to cancel the contract immediately upon the giving of written notice, with the proviso that within 180 days after the giving of that notice, if the property should be sold to any person to whom Harvey had submitted it, then Harvey would have been entitled to the commission, but that if during that 180 days following the giving of written notice it should be sold to anyone to whom Harvey had not submitted it, then Harvey would not be entitled to the commission.
As an alternative contention, Riedlinger maintains that, even if the contract should be interpreted as giving to Harvey the full right to any commission on a sale made to anyone within the 180-day period following the giving of written notice to cancel, the sale here was not made until more than 180 days after such notice to cancel was given, and that, therefore, in any event, Harvey is not entitled to the commission since the sale was not negotiated by him.
We think that the contract is susceptible of only one interpretation. As we view it, it gives to Harvey the full right to a commission on any sale made during the term of the contract and provides that none of its terms could be terminated within the 180-day period following the giving of written notice of intention to terminate. Therefore, when notice was given on November 3rd, 1942, of Riedlinger's intention to terminate the contract at the earliest possible date, Harvey had 180 days within which he could yet negotiate for the sale of the property and within which he would be entitled to a full commission on any sale made either by him or by any one else. That 180 days did not terminate until May 4th, 1943. Riedlinger maintains, however, that even if this be conceded still since the title to the property was not transferred until long after May 3rd, it cannot be said that the sale of the property was within the 180-day period.
When Riedlinger, on April 10th, 1943, accepted Jones' offer for the property, neither he nor Jones could thereafter recede from the contract.
It is true that there still remained the necessity for compliance with the condition, that is to say for the obtaining of the homestead loan, and it still remained necessary that the title to the property be found acceptable to the attorneys of the purchaser. But the loan was secured and the title was approved; in fact the loan was secured within the 180-day period.
To the argument that the condition "Balance subject to homestead terms" was potestative, there are two answers; first, since the condition was met and the property was transferred, Riedlinger should not be heard to raise the contention that there was a potestative condition involved. He should not be permitted to attempt to avoid liability to one agent by showing that a *Page 62 
contract which he made through another, though effective and though acted upon, could not have been enforced had the other party to it attempted to recede from it. Another answer lies in the fact that it is now well settled that such a condition is not potestative but merely suspensive. See Weingart v. Delgado, La.Sup., 16 So.2d 254; Stephen L. Guice Co., Inc. v. Benjamin Perkowski, La.App., 12 So.2d 692; also Morrison v. Mioton,163 La. 1065, 1066, 113 So. 456, 459, and Tulane Law Review, Vol. XVIII, p. 160. Therefore, when the condition was met and a homestead association willing to make the loan was found, the suspensive condition was met and the agreement to make the loan reverted back to the time at which the contract to sell was completed, for it is provided in Article 2041 of our Civil Code that
"* * * the condition being complied with, has a retrospective effect to the day that the engagement was contracted * * *."
And this is true even though, because of Article 2043 of our Civil Code, the contract could not have been enforced until compliance with the suspensive condition or until the occurrence of the event on which the condition depended.
For these reasons, Riedlinger became liable to Harvey when he accepted the offer to sell the property through other agents. At that time he made himself liable for the commission, the interest and attorney's fees, all stipulated for in his contract with Harvey.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.