256 S.W.2d 286 (1953)
REAL ESTATE ENTERPRISES, Inc.
v.
COLLINS et al.
No. 28505.
St. Louis Court of Appeals. Missouri.
March 17, 1953.
Rehearing Denied April 17, 1953.
*287 Gerwitz, Seegers & Lee and G. L. Seegers, St. Louis, for appellant.
Robert N. Jones and Carroll C. Gilpin, St. Louis, for respondents.
BENNICK, Presiding Judge.
This is an action for the recovery of a broker's commission upon the sale of real estate.
Defendants Edward C. Collins and Virginia M. Collins, husband and wife, were the owners of certain real estate and improvements located at 8500 North Broadway in the City of St. Louis. Plaintiff, Real Estate Enterprises, is an incorporated real estate agency with its offices at 5609 Riverview Boulevard in the City of St. Louis.
On February 9, 1949, defendants entered into a listing contract with plaintiff whereby plaintiff was given an exclusive agency to sell the property in question for the price and upon the terms mentioned in the contract or for any other price or upon any other terms to which defendants might consent. The price listed in the contract was $35,000 plus inventory of stock.
The contract provided that plaintiff's exclusive agency should continue for three months from the date of the contract and thereafter until terminated by defendants upon sixty days' notice in writing.
As compensation defendants agreed to pay plaintiff a 5% commission on the selling or exchange price "upon the sale or exchange of this property to any person procured either by them, myself, (ourselves) or any other person during the term of this agency".
A large part of the controversy throughout the trial has centered around the meaning of this provision, that is, whether it was necessary, in order to entitle plaintiff to its commission, that the sale or exchange of the property be actually consummated during the term of the agency, or whether, on the contrary, it was enough that the purchaser be procured by plaintiff or any one else during the term of the agency even though the sale or exchange of the property might not be actually consummated until afterwards.
At a subsequent date the parties modified the contract by adding a provision extending its date from February 9 to May 9, 1949; and on June 9, 1949, defendants gave written notice of their election to terminate the contract, so that by reason of not only the change in date but also the giving of the sixty days' notice in writing, the time for the expiration of the contract was fixed at August 9, 1949. As a matter of fact, it was specifically agreed by the parties that the contract was terminated on such latter date.
At some time in either May or June of 1949, Mr. and Mrs. August Carrara appeared at the property and were referred to one Erny, a salesman for plaintiff, *288 who happened to be on the premises at the time in the hope of meeting an unidentified prospective purchaser he had previously spoken to over the telephone. Erny was admittedly not awaiting the Carraras, who had been attracted to the property through an advertisement which it would seem that defendants themselves had run in one of the St. Louis newspapers. This circumstance, however, is immaterial, since plaintiff's right to a commission was the same under the terms of the contract regardless of who it was that procured a purchaser.
From the very outset of the negotiations the Carraras declined any proposal for the purchase of the property at the figure of $35,000 which was mentioned in plaintiff's listing contract, but did make an offer of $25,000, which was to include all personal property and equipment, and on July 12, 1949, executed an earnest money contract upon such terms. The contract was submitted to defendants on or before July 16th, and was promptly rejected by defendants. Erny thereupon attempted to persuade the Carraras to increase their offer, but was finally told that they were no longer interested in the proposition. In fact, Erny himself testified that when he talked to the Carraras after the rejection of their offer, they told him they were no longer interested, and that he proceeded to advise defendants that the Carraras did not wish to consider the matter any further at that time. They had unqualifiedly refused to make any additional cash offer, and had informed Erny that the only way in which they might reconsider the matter at some later date would be upon the basis of an exchange. Plaintiff ceased to advertise the property as it had been doing prior to the rejection of the Carraras' offer; and there was testimony, which Erny denied, that when defendants inquired of him why there were no further advertisements, he explained that plaintiff had "given it up as a bad deal".
Meanwhile defendant Collins had called upon the Carraras on his own account to see if he might renew their interest in the property. While there was considerable uncertainty in the evidence as to precisely when it was that he made his call, it was in any event quite some time after the expiration of plaintiff's contract. Collins himself put the time at the latter part of September; other evidence put it somewhat earlier. Collins eventually met with success and sold the property to the Carraras on October 24, 1949, for the sum of $28,000, subject to various terms and conditions. August Carrara testified as a witness for plaintiff that Erny had had nothing to do with the final deal, although there was evidence that for two or three weeks after the termination of the contract, Erny had continued to have occasional contacts with both the Carraras and defendants.
The present action for a commission was instituted by plaintiff on December 7, 1949.
In its petition plaintiff alleged for its cause of action that during the term of its agency, and while the contract was in full force and effect, it had procured persons who had afterwards purchased the property for the sum of $28,000, thereby entitling it to its 5% commission amounting to $1,400.
In their answer defendants denied, among other things, that plaintiff or any one else had procured the purchasers of the property during the term of the contract.
Upon a trial to a jury a verdict was returned in favor of defendants. Plaintiff thereupon filed its motion for judgment or, in the alternative, for a new trial; and this being overruled, it gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.
The matters argued by plaintiff in its brief resolve themselves largely into the question of whether, instead of submitting the case to the jury, the court should have peremptorily directed a verdict for plaintiff.
The truth is that as we view the case it was not plaintiff but defendants who were entitled to a directed verdict. However plaintiff is none the less correct in its interpretation of the contract, that is, that it was immaterial upon its right to a commission whether the purchaser was procured by it, or by defendants themselves, so *289 long as he was procured during the term of the agency; and that if the purchaser was procured during the term of the agency, it was also immaterial that the sale might not have been fully consummated or completed until after the termination of the agency.
It is of course a conceded fact that the Carraras were induced to become interested in the property during the term of plaintiff's contract. But even so, was the interest thus induced in May or June of 1949 the procuring cause of their purchase of the property on October 24, 1949? If so, plaintiff was entitled to its commission, but otherwise not.
For one's services in such a matter to be the procuring cause of the sale, it is essential that his initial efforts in calling attention to the property shall have set in motion a series of events which, without a break in their continuity, and without interruption in the negotiations, eventually culminated in the sale. But where there is a definite break in the continuity of the negotiations amounting to an abandonment of the deal, and new forces thereafter enter which bring about a renewal of the negotiations and themselves become the effective cause of the sale, the initial efforts may not then be regarded as the proximate procuring cause so as to be the foundation on which to predicate a right to a commission. Young v. Stecher Cooperage Works, 259 Mo. 215, 168 S.W. 611; Westerman v. Peer Inv. Co., 197 Mo.App. 278, 195 S.W. 78; Good v. Robinson, 194 Mo.App. 453, 184 S.W. 955; Smith v. Allgier, 234 Mo. App. 392, 135 S.W.2d 43.
In this case the evidence was all to one effect that when defendants rejected the Carraras' offer of July 12th, the negotiations were taken as being at an end, and Erny so advised defendants. In fact, Erny and Carrara so testified when called as witnesses for plaintiff, and there was nothing whatever to the contrary. Defendants had refused the only offer which the Carraras had made, and the Carraras were unwilling to make an offer at that time which defendants might have accepted. Any deal growing out of the Carraras' response to the newspaper advertisement was abandoned, and when Erny attempted to press them for an offer upon different terms, they informed him, so he himself testified, that "they were not interested in any way". Furthermore all this came about without any pretense of fraud or lack of good faith on the part of defendants. What happened was that long after plaintiff's agency had expired, defendants renewed the negotiations and succeeded in bringing about a sale which was referable, not to the negotiations which had been carried on while plaintiff's contract was in force, but to the efforts of defendants which were initiated after plaintiff's contract had terminated. In this situation plaintiff was not entitled to a commission, even though the sale was ultimately made to persons with whom negotiations had been conducted to no avail during the period of its agency.
Finally plaintiff complains of the court's action in giving instruction No. 3 of its own motion whereby the jury were told that the burden was upon plaintiff to show that its efforts were the procuring cause of the sale, and that unless the jury so found, plaintiff was not entitled to recover. The same theory was also incorporated in instruction No. 1, which referred the jury to instruction No. 3.
In line with reasons already expressed, it was error to tell the jury that for plaintiff to be entitled to a commission, it was essential that plaintiff itself should have been the procuring cause of the sale. In fact, in another portion of the instructions the court correctly charged the jury that it was immaterial upon plaintiff's right of recovery whether the Carraras were procured by plaintiff, or by defendants, or by any other person, so long as it could properly be said that they were procured while plaintiff's contract was in force. But even though instruction No. 3 was erroneous, the error was none the less harmless and could not constitute a ground for the reversal of the judgment since plaintiff, under the undisputed facts, was not entitled to recover in any event. Robinson v. Pattee, *290 359 Mo. 584, 222 S.W.2d 786; King v. Rieth, 341 Mo. 467, 108 S.W.2d 1.
It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.
ANDERSON and IVAN LEE HOLT, Jr., JJ., concur.