Rheva SPITCAUFSKY, Appellant,

v.

Barat A. GUIGNON, Emile S. Guignon, Jr., Harvey J. Schmelzer and Charles J. Schmelzer, doing business as Guignon Real Estate Company; Herbert V. Jones, Byron T. Shutz, Paul M. Jones, W. J. Campbell, Howard N. Barnum and Neil G. Lilley, II, doing business as Herbert V. Jones & Company; Don L. Werner; Al Kranz, doing business as Al Kranz Excavating Co.; and B. R. Press, Respondents,

and

Great Atlantic & Pacific Tea Company, a corporation; William B. Cozad, Trustee; John Maggio and Paul Cacioppo, doing business as Atlas Excavating and Hauling Company; James Christ, doing business as American Hauling Co.; Edgar Cox and John West, doing business as Cox and West Construction Company; Elmer Shaw and Orval Shaw, doing business as Shaw & Sons; and Ray R. Swinney, Defendants.

No. 46605.

Supreme Court of Missouri,

Division No. 2.

Feb. 9, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied March 9, 1959.

Rope, Shanberg & Rope, Arnold N. Shanberg, Barnett & Skeer, Paul Barnett, Kansas City, for appellant.

Terrell, Hess, Van Osdol and Magruder, Paul Van Osdol, Jr., Charles P. Dribben, Kansas City, for respondent Guignon Real Estate Co.

W. B. Cozad, W. H. Curtis, D. B. Steele, Kansas City, for respondents Byron T. Shutz, Paul M. Jones, W. J. Campbell, Howard N. Barnum and Neil G. Lilley, II, d/b/a Herbert V. Jones & Co. Kansas City, Morrison, Hecker, Buck, Cozad & Rogers, of counsel.

E. A. (Bert) Taylor, Donald E. Raymond, Kansas City, for respondent Don L. Werner. Pew, Taylor, Sheridan & Baty, Kansas City, of counsel.

Roger S. Miller, Kansas City, for respondent, Kranz.

Jack Z. Krigel, Kansas City, and Robert J. Coleman, Kansas City, for respondent B. R. Press.

STOCKARD, Commissioner.

Appellant, Rheva Spitcaufsky, brought suit to quiet title to a tract of land located at 3811 East Blue Parkway, Kansas City,

Missouri, and for a declaratory judgment that various claims made by the defendants do not constitute a lien against the land and that appellant is not indebted to any of the defendants for commissions or for labor or materials furnished. The defendants filed numerous counterclaims and cross-claims. The pleadings are set forth in 126 pages of the transcript. Several of the defendants obtained judgment against plaintiff-appellant on their respective counterclaims, but on this appeal appellant challenges the judgment only insofar as it pertains to five defendants or groups of defendants. Jurisdiction is in this court because the amount in dispute exceeds the sum of $7,500.

Appellant became interested in using an undeveloped tract of land owned by her for the construction of a large retail "supermarket," but she needed a tenant and one hundred per cent financing to construct the project. Through her father, John Spitcaufsky, who admittedly was acting as her agent, she entered into an oral agreement with Guignon Realty Company, a partnership, (hereafter referred to as the Guignons), that it should negotiate in her behalf a lease with some tenant to use a building to be constructed by her. Apparently at the time the parties had in mind as the tenant The Great Atlantic & Pacific Tea Company (hereafter referred to as the A & P Company). It was also a part of this oral agreement that the Guignons should obtain financing for appellant in an amount sufficient to construct a building and facilities which would meet the requirements of the tenant, and to pay certain other costs including a title policy, appellant's attorney fees, and the Guignons' commission. For these services the Guignons were to receive a commission equal to five per cent of the rentals for the initial term of the lease.

Thereafter the Guignons negotiated a lease satisfactory to appellant with the A & P Company which was executed on November 29, 1955. This lease was for an original period of eight years beginning April 1, 1956, with an option to the lessee to renew for two successive five-year periods at the agreed rental of $1,900 per month. The lease agreement contained general plans and specifications for the construction of the building and parking lot, but these obviously were not the complete plans and it was provided that the plans and specifications for the building were to be submitted to and approved by the lessee. There was also a provision that the agreement was "Predicated on the basis of the lessor's ability to obtain loan of sufficient sum to cover construction of building, improvements and incidental expenses."

Don L. Werner, a contractor, was present at the Guignons' office, and he assisted John Spitcaufsky and the Guignons in estimating the cost of the construction features of the project. By reason of the efforts of the Guignons the New England Mutual Life Insurance Company, by letter to their Kansas City representative, dated February 3, 1956, agreed to loan to appellant the sum of $160,000 for 15 years at 4¾ per cent interest, payable in monthly instalments. However, no money was to be advanced by it until after the building had been completed, occupied and accepted by the A & P Company. Herbert V. Jones & Company agreed to make an interim loan of $160,000 to appellant payable on August 1, 1956. In this manner financing satisfactory·to appellant in the amount of $160,000 for the construction of the project was obtained by the Guignons.

While negotiations for the loans were being carried on, Barat Guignon, a member of the Guignon Realty Company, "activated the idea" that appellant should enter into a contract for the construction of the building so that a fixed cost could be determined before she committed herself to the necessary financing. John Spitcaufsky knew that Werner was a contractor and that he was interested in obtaining the contract, but he insisted on and did obtain bids from other contractors. On January 6, 1956, Werner and appel-

lant entered into a contract whereby Werner agreed to construct the project according to plans and specifications already then prepared for the total sum of $146,000. This contract provided that Werner was to obtain and deliver to appellant a "Faithful Performance to Completion Bond" in the amount of $146,000, and a "Maintenance Bond" guaranteeing to appellant that for and during the period of five years following the completion of the project Werner would "make good, at his own expense, in accordance with the instructions of Owner, any and all faulty or defective material or workmanship," and that during the "last summer" of the five-year period Werner would "repair all holes, depressions or ruts in any of the pavements on the premises, and cover the repaired surfaces with a seal coat the same as in the original specifications." A further provision was that the contract was made "expressly subject to Owner's ability to obtain a loan of sufficient size to pay all of Owner's obligations hereunder as well as other improvements" required under the lease with the A & P Company. Appellant agreed to notify Werner upon "receipt of a written firm commitment" for the loan, and Werner agreed to commence work under the contract within ten days thereafter.

On March 19, 1956, appellant notified Werner by letter that "the loan has been accomplished." Werner had not obtained either of the two bonds provided for in the contract, but this was known by appellant because the bonds were to have been delivered to and approved by her. After receiving the above notice Werner started work on March 27 at the specific insistence of John Spitcaufsky, and he continued working until April 26. While this work was being done by Werner, John Spitcaufsky was at the project every day as agent for appellant, and appellant was there two or three times each week. On April 24 appellant told Werner that if he did not get "the bond" (apparently the performance bond) he would have to quit work. Werner had been attempting to obtain a performance bond and he thought he could do so, but he discovered that he could not, and when he told appellant this she "shut the job down right then."

Appellant then attempted to get a new contractor and obtained several bids, one of which was from Sam Dasta & Sons (hereafter referred to as Dasta). By letter dated June 1, 1956, Dasta offered to construct the "A & P Store * * * in accordance with drawings as presented to us by A & P Construction Department and also drawings as presented to us by the owner" for the sum of $145,978. This bid from Dasta included the cost of a performance bond but not a maintenance bond. The construction of the project pursuant to this bid would have been acceptable to the A & P Company, and the bid was within the available financing. Following this offer by Dasta a conference was held in the office of the district manager of the A & P Company which was attended by John Spitcaufsky, Emile Guignon, Vince Dasta (a member of Sam Dasta & Sons) and a representative of the A & P Company. John Spitcaufsky insisted that certain additional items be included in a contract with Dasta, and as a result Dasta submitted a letter dated June 7 in which he itemized the various items and his price for each. The total amount was $8,850. We need not set them forth in detail, but in general they included the cost of a "guarantee bond" for certain maintenance items, the maintenance of the parking lot at the end of five years, the filling and sodding of two banks and a water line to these banks, a higher elevation of the floor of the building and the parking lot, and the use of reinforcing steel in the floor similar to that used in the Kansas turnpike instead of wire mesh. There were two other items totaling $1,700, but precisely what they included is not clear from the letter itself. Dasta indicated some doubt whether the "guarantee bond" could be obtained because in his past experience no such bond had ever been required.

The Guignons, Mr. Vince Dasta and the A & P Company representative attempted to persuade John Spitcaufsky to eliminate the above extra items, but he refused to eliminate any of them, and as a result the project was not constructed. The real estate manager of the A & P Company testified unequivocally that the extra items in the Dasta letter of June 7 were additional requirements beyond the needs of the A & P Company, and Mr. Vince Dasta testified that the plans and specifications upon which his bid of $145,978 was based called for a sound building. His bid was based on "drawings" presented to him by John Spitcaufsky which were plans and specifications prepared by B. R. Press and previously approved by appellant.

Barat Guignon testified that during the negotiations he told appellant and her father that he estimated the income from the project, after amortization of the loan, taxes, and maintenance and insurance, to be from $3,000 to $3,500 a year, and that if they would waive the extra items in the Dasta letter of June 7, the Guignons would look only to that profit "to pay our commission, or if that much was not earned we would wait until it was earned." There was also another proposal to plaintiff and her father, the general terms of which were that the Guignons and Dasta would assume responsibility for the completion of the project and return the building to plaintiff at the end of the lease. Appellant rejected both proposals.

We shall now take up the contentions made by appellant as to the claim of each respondent. Such additional facts as may be necessary shall be stated in connection with each.

The Guignons contended in their counterclaim that they had complied fully with all the terms of their oral agreement with appellant, but that by insisting on additional and unnecessary changes in the plans and specifications appellant had prevented the construction of the project, and that they are therefore entitled to their full commission. The trial court entered judgment in favor of the Guignons for $9,120, the full amount of their commission if the project had been constructed. Appellant contends that the trial court erred in entering this judgment because (a) "the defendants had a contract to procure a loan and to be paid a commission out of the proceeds thereof; but the loan was not procured;" (b) "plaintiff did not wrongfully make it impossible for these defendants to procure the loan;" (c) the "arrangement" that the Guignons should procure a lease "did not imply that they would procure a condition therein that plaintiff would maintain any part of the leased premises at her own expense;" (d) the Guignons were "charged with knowledge of the plaintiff's contract with Werner;" (e) the judgment is against the evidence and the weight of the evidence; and (f) the court erred in receiving in evidence a letter from plaintiff's attorney to Barat Guignon because it constituted an offer of compromise.

Points (a) and (b) will be considered together, and we must admit that some difficulty is experienced in reconciling what we understand to be appellant's contentions. In point (a) it is contended that the Guignons "had a contract to procure a loan * * * but the loan was not procured," and in the argument under point (b) it is asserted that the "Guignons did not have a contract but only a general understanding concerning the objective which they and the plaintiff would endeavor to pursue." In addition, we are not able to determine precisely what appellant means by the contention that "the loan was not procured." Of course, the money was not obtained and physically handed over to her, but it was not contemplated that it should be. As we shall subsequently mention, a firm commitment for adequate financing was obtained. From the argument in appellant's brief we conclude that what appellant really contends by her points (a) and (b) is that her liability for the payment of the commission to the Guignons was contingent upon the construction of the super-market and its ac-

ceptance by the A & P Company; she did not "wrongfully" prevent the occurrence of the contingency; and she had no valid contract to pay a commission except upon the occurrence of the above-mentioned contingency.

██ Whether a broker becomes entitled to his commission upon the completion of the specific acts he agreed to do depends upon the terms of his contract. Wolcott v. Moser, 364 Mo. 443, 262 S.W.2d 620; Bowman v. Rahmoeller, 331 Mo. 868, 55 S.W.2d 453, 458; Pratt v. Irwin, Mo.App., 189 S.W. 398. The parties may by contract provide that even if the broker does all he contracts to do he shall not be entitled to a commission unless certain contingencies occur. Tant v. Gee, 348 Mo. 633, 154 S.W.2d 745. However, the Guignons contend, and it is a well established principle, that even though liability for commissions under a contract is contingent upon the accomplishment of a condition or the occurrence of an event, if the promisor prevents or hinders the occurrence, happening or fulfillment of the condition in a contract, and the condition would have occurred or happened or would have been fulfilled except for such hindrance or prevention by the promisor, then the performance of the condition is excused and the liability of the promisor is fixed regardless of the failure to fulfill the condition. Schulte Transportation Company v. Hewitt, Mo.App., 299 S.W.2d 568; Staples v. O'Reilly, Mo.App., 288 S.W.2d 670; McClure v. Wilson, 238 Mo.App. 824, 185 S.W.2d 878; Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920; 12 C.J.S. Brokers § 95 a; 17 C.J.S. Contracts § 468; 2 Williston on Contracts, Rev. ed., § 677; 12 Am.Jur., Contracts, § 329; 8 Am.Jur., Brokers, § 181; Annotations 20 A.L.R. 294 and 169 A.L.R. 605. Appellant does not dispute the above rule as a general proposition, but she contends that it does not apply to this case because she did not "wrongfully" prevent the construction of the super-market.

██ The oral agreement between appellant and the Guignons was not that they would obtain sufficient financing to construct any building which plaintiff might want to construct, but to obtain sufficient and adequate financing to construct a building and facilities suitable to the tenant, which turned out to be the A & P Company, for the purposes it was to be used. This, of course, meant a building of sound construction and one built according to the accepted standards in the industry. Appellant and the A & P Company agreed to the general specifications and the design of the building when the lease was executed, and appellant and the A & P Company both agreed to the plans and specifications prepared by B. R. Press. It was by use of these plans and specifications that arrangements were made for the financing. Dasta offered to construct the project "in accordance with drawings as presented to us by A & P Construction Department and also drawings as presented to us by the owner" for a total sum within the available financing, and there can be no doubt that this would have resulted in a building of sound construction suitable to the A & P Company for the purposes intended. The appellant then refused to proceed with the project because the available financing was not adequate to pay for other and additional items which she insisted on including in the construction contract. The determinative question is whether the refusal of appellant to proceed under the above circumstances was such an unwarranted hindrance that, notwithstanding the agreement that the commission was not to be paid until the completed building was accepted by the A & P Company, the Guignons are entitled to their commission. In this connection, it is not necessary that the refusal be "wrongful" in the sense of being illegal, as appellant implies, but only that it be unwarranted in the sense of being without just cause. The trial court found that the refusal was unwarranted in this sense, and we agree. In so holding

we do not imply that the additional items would not have resulted in a better building. Perhaps they would have done so; at least the cost would have been increased. But, if appellant had wanted a building with those items included she could have insisted that her agreement with the Guignons directly so provide or that those items be included in her agreement with the A & P Company. When she did not do so, she cannot wait until after the Guignons have completed the financial arrangements and then refuse to proceed unless certain extra items be included which were not contemplated by the Guignons and were not included in the plans and specifications, and were not required by the A & P Company and were not needed for the construction of a sound building, without incurring liability on her part for the payment of the otherwise earned commission of the Guignons.

Appellant argues that she was entitled to insist that the extra items be included in the Dasta contract because most of them were included in the Werner contract. While it is debatable as to some items, we shall assume that all were included but three, which is what appellant contends. However, the Werner contract is not the standard by which it is to be determined if these extra items were to be financed under the arrangements to be made by the Guignons. That agreement was negotiated by Werner and appellant, and until copies were furnished to the Guignons they had no reason to know its contents. After the Werner contract was abandoned, the parties started all over again in obtaining a contractor, and the controlling standard as to what was to be included in the project and financed by the Guignons was the lease agreement with the A & P Company.

■ Appellant also argues that her agreement with the Guignons to pay them a commission was not a valid contract because of vagueness in that it did not contain the terms of the lease or the financing to be procured. She cites cases such as Ladd v. Foster Inv. Co., 10 Cir., 40 F.2d 497, where general language to that effect pertaining to a bilateral contract can be found. However, appellant has confused the basic requirements of a bilateral contract with those of a unilateral contract, and the evidence here clearly establishes the existence of a unilateral oral contract. See I Williston on Contracts, 3rd ed., § 13; Aden v. Dalton, 341 Mo. 454, 107 S.W.2d 1070, 1073; Restatement, Contracts, § 12. The unilateral agreement was that if the Guignons would negotiate a lease and make financial arrangements for the construction of the project satisfactory to appellant they were to be paid a commission when the building was accepted by the A & P Company. The Guignons did all that was required of them, and the only question is whether appellant was at fault in preventing the occurrence of the contingency, and both we and the trial court conclude that she was.

We turn now to appellant's point (c) which is that the arrangement with the Guignons did not imply that they should negotiate a lease with the A & P Company with a provision that she should maintain the parking lot. It seems to be appellant's contention that these maintenance costs were placed on her against her wishes, and that she was for that reason entitled to include the cost of maintenance as an item to be financed from the funds to be procured by the Guignons. She attempted to do this by insisting that the Dasta bid include the cost of a "seal" coat to the parking lot at the end of five years and the cost of a "guarantee bond" for certain maintenance. This contention is without merit. Appellant expressly agreed to the provision that she should maintain the parking lot, and the agreement was that the financing should cover the cost of construction and certain other incidental expenses but maintenance was not included. There can be no question but that the monthly rental of $1,900 was based on the allocation to appellant of this maintenance. Upon the the-

ory advanced by appellant, she could with equal logic have insisted that the financing provide a sum sufficient to pay all taxes levied against the property during the term of the lease. In addition, appellant cannot in any event justify her refusal to proceed with the construction of the project for this reason alone because the maintenance items constituted only two of the extra items, and she refused to proceed unless all were included.

Appellant's point (d), that the Guignons were charged with knowledge of the terms of the contract with Werner, is also without merit. As previously pointed out, the Guignons had no part in the negotiation of this contract and did not know its terms until after it was executed. However, assuming that the Guignons were charged with knowledge, as appellant contends, she does not demonstrate how this would affect the result the trial court reached as to the claim of the Guignons.

■ Contentions (e) and (f) of appellant are that the judgment in favor of the Guignons is against the evidence, and that the trial court erred in admitting in evidence a letter which appellant contends was an offer of compromise made after this suit was filed. The first contention is necessarily disposed of by our previous rulings. As to the second contention, on this appeal we review the evidence as in suits in equity, Section 510.310 RSMo 1949, V.A.M.S., and in doing so we have given no consideration whatever to the contents of this letter. Therefore, assuming that it was improperly admitted, which we doubt, the result reached on the merits of the judgment in favor of the Guignons is not thereby affected.

We turn now to the contentions of appellant concerning the judgment entered on the counterclaim of Byron T. Shutz, Paul M. Jones, W. J. Campbell, Howard N. Barnum and Neil G. Lilley, II, doing business as Herbert V. Jones & Company (hereafter referred to by its partnership name). By its counterclaim this partnership sought to recover from appellant the sum of $3,200 as services rendered in obtaining a mortgage loan commitment from the New England Mutual Life Insurance Company and the sum of $122.05 as actual expenses. The only issue here is as to the $3,200.

Prior to January 10, 1956, the Guignons, on behalf of appellant and pursuant to their oral contract with her, contacted and started negotiations with Herbert V. Jones & Company relative to securing a loan for appellant, and they furnished to it copies of the lease between appellant and the A & P Company, various plans and specifications and "construction contracts." On January 10, 1956, appellant executed a writing whereby she appointed Herbert V. Jones & Company as her agent to obtain a loan for her in the amount of $160,000, and one provision therein was that "If for any cause I fail to complete said loan after my application for same has been approved by Herbert V. Jones & Company or its principal, and a firm commitment issued to the applicant, I hereby agree to pay all fees and expenses that have been incurred and I also agree to pay Herbert V. Jones & Company a commission of two per cent on the amount of the loan that has been approved, as compensation for services rendered." Appellant also executed on January 10, 1956, an application for a loan in the amount of $160,000 to New England Mutual Life Insurance Company on forms furnished by Herbert V. Jones & Company. On February 3, 1956, New England Mutual Life Insurance Company sent to Herbert V. Jones & Company a letter in which it was stated that "our Finance Committee has approved a loan to be secured by the property at the above location to Rheva Spitcaufsky in the amount of $160,000 for fifteen (15) years at 4¾% interest payable $1,340.00 monthly on interest and principal during the first eight years and $1,089.20 during the last seven years. * * * The lease to the Great Atlantic & Pacific Tea Company for eight years at $22,800 is to be assigned to us, which lease has been approved with the exception of the para-

graph referring to competitive sales which we understand they have agreed to eliminate. No money is to be advanced by us until the building has been completed, occupied and accepted by the Tea Company." The original copy of the lease shows that the paragraph pertaining to competitive sales was marked out and deleted therefrom on February 7, 1956, with the approval of appellant and the A & P Company. At the bottom of the letter from New England Mutual Life Insurance Company appears the words "Accepted: February 7, 1956," and following that appears the signature of Rheva Spitcaufsky.

The only point in appellant's brief pertaining to the judgment in favor of Herbert V. Jones & Company is that in entering this judgment the trial court erred because "These partners contracted to obtain a firm commitment to make a loan to plaintiff, and no such firm commitment was obtained," and "The printed words in the application were prepared by Herbert V. Jones & Company and therefore should be more strictly construed against them."

█ Appellant argues that because the letter from New England Mutual Life Insurance Company provided that "No money is to be advanced by us until the building has been completed, occupied and accepted by the Tea Company," and that the lease to A & P Company was to be assigned to the insurance company, there was no firm commitment but only a contingent commitment. Apparently it is her theory, although she does not specifically so state, that these two conditions were not in her application for the loan, and therefore, when inserted by the insurance company as conditions to making the loan it did not make a firm commitment to loan her the money on her terms. There may be some merit to this contention except for one important fact. After the receipt of the letter from New England Mutual Life Insurance Company containing the commitment to make the loan, the plaintiff placed her signature thereon indicating that she accepted the addition of those two conditions, and that she

accepted the precise offer as therein made and contained. The term "firm commitment" as used in the agreement in which plaintiff promised to pay a commission to Herbert V. Jones & Company meant an unequivocal and irrevocable offer (for a specified period or for a reasonable period under the circumstances if no specific period was stated) to loan the money on the agreed terms, and when plaintiff "accepted" the offer with the addition of the new terms, she incorporated those terms into her request for the money. There can be no question but that the offer of New England Mutual Life Insurance Company constituted a "firm commitment" to loan the money on the terms set forth in the letter which were agreed to and accepted by plaintiff. When we give the words used the strict construction appellant contends they should be given, she still has not demonstrated that the judgment in favor of Herbert V. Jones & Company is erroneous.

The trial court entered judgment against appellant and in favor of Don L. Werner, the contractor, on his counterclaim in the amount of $8,398.32. Appellant asserts this was error because (1) "Werner breached his contract and therefore cannot recover upon the contract," (2) "Plaintiff did not waive the right to require Werner to give bond," and (3) "Werner cannot recover the reasonable value of services performed by his subcontractors because [a] he did not pay these contractors, and [b] plaintiff received nothing of value from Werner." We shall consider the first two contentions together.

█ The contract between Werner and appellant specifically provided that he was to obtain and deliver to appellant a performance bond "before beginning the job hereunder." However, John Spitcaufsky, as appellant's agent, insisted that Werner start actual construction knowing that the bond had not been obtained, and while the work was being done by Werner and his subcontractors, John Spitcaufsky was present at the building site every day super-

vising the work as appellant's agent, and appellant was personally present two or three times each week. Therefore, the work was done at the express request of appellant and with her actual knowledge and consent, and the evidence establishes that the work was of value to appellant. Under such circumstances Werner is entitled to recover the reasonable value of the work done on the basis of quantum meruit, which is the basis on which he sued and which the trial court entered judgment in his favor. Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co., Mo.Sup., 201 S.W. 864; Huggins v. Hill, Mo.App., 245 S.W. 1105; 98 C.J.S. Work and Labor § 31; 58 Am.Jur., Work & Labor, § 50. This is true whether the work was actually performed by him personally or by his employees or subcontractors. See Johnston v. Star Bucket Pump Co., 274 Mo. 414, 202 S.W. 1143; Rodgers v. Levy, Mo. App., 199 S.W.2d 79. Appellant does not contend the work was not done or that it was not done in a workmanlike manner. Neither does she contend that the judgment exceeds the reasonable value of the work, and we do not have presented on this appeal the question of whether appellant would be entitled to damages for the alleged subsequent breach of the contract by Werner, and if so, whether those damages should be offset against the amount otherwise recoverable under quantum meruit. See 98 C.J.S. Work and Labor § 66(4), and Bradley Heating Co. v. Thomas M. Sayman Realty & Investment Co., supra. Conceding that Werner may have breached his contract by failing to procure the performance bond when demanded by appellant, and that appellant did not waive her right to insist that Werner furnish a performance bond, these circumstances would not prevent Werner from recovering under quantum meruit for the reasonable value of work actually done at her request and with her knowledge and consent.

■ The third point respecting the judgment in favor of Werner, as worded, has been answered by reason of what we have just said. However, under this point appellant argues that Werner is not entitled to recover because an award under quantum meruit is based on "as much as he deserves" and Werner does not "deserve" to recover anything because "in violation of his contract" he hired subcontractors to haul dirt and place it on appellant's land, and then "by neglecting to pay any of them he turned them loose to enforce mechanic's liens against her land," and because Werner has taken bankruptcy and he intends to collect from appellant, receive a discharge from bankruptcy and never pay the subcontractors and appellant should not be held twice for the same indebtedness.

As previously pointed out, at the time Werner had the subcontractors do the work for which the court entered judgment in his favor, appellant had temporarily waived the requirement that Werner post a performance bond. Therefore, Werner did not have the work done in violation of his contract. Werner did testify that he had taken out bankruptcy, but that does not affect appellant's liability to pay for the work done, and as to the question of appellant being held twice for the same indebtedness, the judgment of the trial court specifically provided that in the event appellant satisfies in whole or in part any one or more of the judgments in favor of the named subcontractors declared to have a lien on her land, she then shall be entitled to a credit on the judgment in favor of Werner to the extent of any amounts of principal or interest so paid. See Section 429.140 RSMo 1949, V.A.M.S. In this manner the trial court provided an adequate method to protect appellant from being held twice for the same indebtedness if she desires to take advantage of it in a proper manner. We note that appellant has dismissed her appeal as to four subcontractors whose claims totaled $3,796.96, and which amount is included in the judgment in favor of Werner, on the basis that she has settled those claims with the subcontractors.

■ Appellant next contends that the trial court erred in entering judgment against her in favor of B. R. Press, a registered architect, in the amount of $1,500 on his counterclaim based on quantum meruit. Press was employed by Werner, several weeks prior to the time that Werner and appellant entered into the construction contract, to prepare the plans and specifications at an agreed price of $1,500. At the time Press prepared the plans and specifications he had no agreement or arrangement with appellant or John Spitcaufsky. These plans were expressly approved by appellant and they were used by her and Werner in negotiating the construction contract and were made a part thereof. They were necessary in order to obtain the required building permit from the city, and they were used by appellant in negotiating with Herbert V. Jones & Company for the financing to construct the project. Although appellant denies this, it is also evident that they were used by her in obtaining bids from other contractors, including Dasta, after she stopped the construction work by Werner. The arrangement between appellant and Werner, as expressed in the construction contract, was that "All surveys, architectural drawings and specifications and copies thereof are the property of Owner [appellant], but are to be paid for by Contractor."

■ Press does not base his claim against appellant on the contention that he prepared the plans and specifications at the specific request of appellant or that he had a contract with her to do so, but solely on the contention that after he prepared the plans and specifications pursuant to his contract with Werner, appellant expressly adopted them and used them to her advantage independent of the purpose for which Press furnished them to Werner, and he therefore is entitled to recover from appellant the reasonable value thereof. See 98 C.J.S. Work and Labor § 10; Kolb v. Howard Corporation, Mo.App., 219 S.W.2d 856; Patrick v. Crank, Mo.App., 110 S.W.2d 381. Press, of course, does not contend that he is entitled to collect from both Werner and appellant. The trial court found that the plans and specifications were accepted, approved and used by appellant, that Press expected to be paid by appellant if she used his plans and specifications, and that under the circumstances appellant knew or should have known this. There is no contention that the reasonable value of the plans and specifications was less than $1,500 or that they were not properly prepared. The evidence is conflicting as to what extent appellant appropriated and used the plans and specifications for purposes other than that for which they were turned over to Werner. The judgment of the trial court as to this claim is not clearly erroneous, and in this situation we defer to the findings and conclusions of the trial court who was in a far better position than we to determine the facts based on the credibility of the witnesses. Beckemeier v. Baessler, Mo.Sup., 270 S.W.2d 782.

In connection with this claim by Press we make this further comment. The trial court entered judgment in favor of Press on his cross-claim against Werner in the amount of $1,500, the contract price for the plans and specifications, and it also entered judgment in favor of Werner against appellant in the amount of $8,398.32 which included an item in the amount of $1,500 for the Press plans and specifications. The judgment then provides that appellant shall receive credit on the Werner judgment for any payment to Press. By reference back to appellant's assignments of error directed to the judgment in favor of Werner it will readily be seen that she does not directly challenge the inclusion therein of the $1,500 item, and, as previously stated, appellant has not demonstrated on this appeal why that judgment should not be affirmed. Therefore, while Press may have some reason to prefer to collect directly from appellant rather than indirectly from her through Werner, it does not readily appear how appellant could be prejudiced by the judgment against her in favor of Press.

Appellant's last contention is that the trial court erred in entering judgment against her in favor of Al Kranz, doing business as Kranz Excavating Company, in the amount of $2,187.50 on his counterclaim. Appellant's contentions are that the "weight of the evidence" shows that Kranz was a subcontractor of Werner and that he sought to enforce a mechanic's lien by his counterclaim against appellant without joining Werner, the general contractor, in violation of Section 429.190 RSMo 1949, V.A.M.S. See also Reis v. Taylor, Mo. App., 103 S.W.2d 892, where it was held that a subcontractor may not maintain a suit against the owner to enforce a mechanic's lien unless he joins the general contractor as a party defendant.

█ The first matter to be noted, which incidentally is not mentioned in the briefs of appellant or Kranz, is that according to the transcript on file in this court the trial court did not enter a judgment in favor of Kranz and against appellant. Kranz filed a counterclaim against appellant, but he did not file a cross-claim against Werner, and he did not purport to join Werner in his suit by counterclaim to enforce his mechanic's lien. In the findings of fact and conclusions of law the trial court found that Kranz, "at the special instance and request of Rheva Spitcaufsky, and her agent, John Spitcaufsky," did perform the work for which payment was sought, that the sum of $2,187.50 "is now due and owing to Al Kranz from Rheva Spitcaufsky," and that Kranz properly perfected his mechanic's lien. But, in the judgment proper it is provided that Kranz "have judgment against the defendant, Don L. Werner, in the amount of $2,187.50." It is apparent that there is a typographical error in the transcript, or that for some unexplained reason Werner was substituted for appellant in the judgment. We also note that it is the position of Kranz that he was a prime contractor of appellant, and that it is the position of appellant that Kranz was a subcontractor of Werner. The item of $2,187.50 representing the work done by Kranz is included in the judgment in the amount of $8,398.32 in favor of Werner, but it should not be so included if Kranz was a prime contractor as the trial court found and as Kranz contends. But if Kranz was a subcontractor as appellant contends, then although he may have improperly failed to join the general contractor insofar as his suit to establish a lien is concerned, appellant has made no direct contention on this appeal that the judgment in favor of Werner should not include the $2,187.50 item. We then have the same situation as in the claim of Press where it is not readily apparent how appellant is prejudiced. In this situation we should determine the correct judgment and direct its entry. Anison v. Rice, Mo.Sup., 282 S.W.2d 497.

█ The evidence establishes that the work which was done by Kranz was a part of the work to be performed by Werner under his construction contract with appellant. But, it was John Spitcaufsky, acting as agent for appellant, who called Kranz and made arrangements with him to do the work, and it was John Spitcaufsky who directed the work and told the employees of Kranz where to go and what to do. It was true that Werner talked to Kranz after John Spitcaufsky did and that Werner called Kranz at the direction of John Spitcaufsky, but the original arrangements were made with Kranz by John Spitcaufsky. Kranz also testified that he "was looking for my check from Spitcaufsky." There is some conflict in the evidence, but the trial court heard and observed the witnesses and found that Kranz was employed directly by John Spitcaufsky, and under the circumstances we defer to those findings. Beckemeier v. Baessler, supra. In this situation Kranz was entitled to look directly to appellant for his compensation, and in maintaining his suit to establish his lien it was not necessary for him to join Werner. Therefore, the judgment should be corrected to correspond with the findings, or that Kranz have judgment against Rheva Spitcaufsky instead of

Werner in the amount of $2,187.50, and that the judgment constitute a special lien on appellant's property. In view of this, the judgment in favor of Werner should also be corrected by deleting therefrom the amount of $2,187.50 representing the amount of the claim for the work done by Kranz.

The judgment in this case is affirmed except in the respects above mentioned, and the cause is remanded for correction of the judgment and as corrected it is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.