Orville NICHOLS, Plaintiff-Respondent,

v.

Dennis J. PENDLEY and Berniece Pendley,
Defendants-Appellants.

No. 7809.

Springfield Court of Appeals.

Missouri.

Jan. 25, 1960.

**674**

Henry Warten, Joplin, for defendants-appellants.

Jim Poynor, Joplin, for plaintiff-respondent.

RUARK, Judge.

This is a suit by a real estate broker against the owners-sellers for commission. At the close of all the evidence the court directed a verdict for the plaintiff broker, and from the judgment on that verdict the defendants have appealed. The facts, which are largely agreed, are as follows:

On March 2, 1958, the parties entered into written contract whereby appellant owners appointed respondent broker as an exclusive agent for a period of two weeks to sell a certain residence at a price of $8,750. The contract further provided that "if this property is sold during the time this agreement is in force, *or if sold to anyone to whom said property was submitted* by Nichols Agency [the broker] or his representatives within 3 months from the termination date hereof, then in that event the undersigned shall pay to said Nichols Agency, Broker, 5% of the sales price as his commission due." It is admitted that, within the two-week exclusive period, the "plaintiff's salesman, Allee, on or about March 9, 1958, offered defendants' property to the Woolevers for sale and took the Woolevers through the house." The salesman Allee, who testified that he "showed the property" to Mr. and Mrs. Woolever,

explained, without objection, that "what they term showing the property is taking them through the house and trying, well not exactly trying, but at least *submitting* it to the customers so they can make up their mind whether they want to buy the property or not." Both Mr. and Mrs. Pendley, the defendant-appellant owners, were present at the house and knew that plaintiff was showing it to the Woolevers. Woolevers did not then or thereafter make the plaintiff any offer, and there is a hiatus in the evidence as to what, if anything, occurred thereafter until the defendants transferred the property (in an exchange) to the Woolevers. The date of this transfer was well within the 90-day extension period.

The defendant Pendley testified:

"Q. Now, Mr. Pendley, were you present when Mr. Allee showed the property to the Woolevers? A. That's right, I was.

"Q. All right, and, er, then did the Woolevers later take over your property? A. Later took it over, yes.

"Q. Within the 90 days? A. Yes.

"The Court: Do you know what date they did take it over?

"A. It was about a month later, just as soon as the F.H.A. papers went through. I don't know the exact date."

The agreed price of the property when transferred by defendants to the Woolevers was $8,750, but apparently, in order to get an F.H.A. loan, the property was valued at $9,125. Woolever got the F.H.A. loan and paid off the existing mortgage against defendants' house. Defendants took Woolevers' house subject to a mortgage, which they assumed. Pendley testified, without elaboration:

"Q. Who effected the exchange of properties between you and Mr. Woolever? A. Edward Chitwood [an agent of a rival agency]."

Mr. Chitwood did not testify, and there is no showing when he came into the picture,

whom he represented, or whether he ever had contact with the Woolevers, or the defendants, prior to the actual consummation of the trade.

Appellants' first and principal contention is that the plaintiff could not recover because he did not show himself to be the efficient procuring cause of the sale.

We can agree with the appellants that on a *quantum meruit* action or an action based upon a general listing, where the terms are not fixed by special contract, the broker is not entitled to his commission unless he is the "efficient procuring cause" of the sale, and that the inducing cause must be one which is set in motion by the broker and proceeds without a break in continuity from the beginning to consummation of the sale.[1] But if the broker is the procuring cause of a sale at a consideration satisfactory to the seller, he is not to be denied his commission because the owner or another broker consummates the transaction. In the more succulent language of Judge Thompson (Brennan v. Roach, 47 Mo.App. 290, 297), it is the broker who shakes the tree, and not the one who runs up and gathers the fallen apples, who is entitled to the commission.[2] Nor is the broker to be denied because the seller is satisfied to accept an exchange of property instead of cash, or in some way varies the listed price.[3]

It is not disputed that the broker "produced" the (then prospective) buyers, in the sense that he learned of them, secured their consent to look at the property, showed it to them in the presence of the owners, and offered it to them for sale. Within approximately a month after that an F.H.A. loan was obtained and the exchange was effected. There is no showing that the prospective buyers refused to consider the property or that the plaintiff abandoned the sale, and of course the defendants knew that the Woolevers were the plaintiff's prospects. While we find it unnecessary to go as far as some courts have gone in somewhat similar situations, we think we are within the bounds of reason in saying that, where the agent produces the prospect, and the prospect within a reasonable time thereafter buys on terms commensurate with the listed price, in the absence of any evidence to the contrary it should be presumed that such prospect-buyer was ready, willing, and able to buy, for "where a sale is consummated, that fact in itself proves that the purchaser is ready, willing and able and also, of course, that he has come in contact with the seller."[4] And, given that showing, i. e., the production of a prospective purchaser who within a reasonable time thereafter buys at the listed price, it should be the owner's burden to show that the sale was not the result of the broker's procurement. No such showing has been made here. All we have is that the plaintiff made his cast and was playing the fish. The next thing we know is that another broker put it on the stringer. Absent showing of some intervening occurrence we

1. Rogers v. McCune, Mo.App., 283 S.W.2d 872, 878; Taylor v. Vestal, Mo., 304 S.W.2d 820; Real Estate Enterprises v. Collins, Mo.App., 256 S.W.2d 286; Vigeant v. Fidelity Nat. Bank & Trust Co., 236 Mo.App. 774, 158 S.W.2d 184.

2. Le Compte v. Sanders, Mo.App., 229 S.W.2d 298; Feldman v. Goldman, Mo. App., 164 S.W.2d 634, 639; Barnum v. Hutchens Metal Products, Inc., Mo., 255 S.W.2d 807; Studt v. Leiweke, Mo.App., 100 S.W.2d 30, 34; Brewer v. Gowin, Mo. App., 241 S.W.2d 275; United Farm Agency v. Howald, Mo.App., 263 S.W. 2d 889 (2).

3. 12 C.J.S. Brokers § 86b, pp. 196, 197; Grether v. McCormick, 79 Mo.App. 325; Duncan v. Turner, 171 Mo.App. 661, 154 S.W. 816, 819; McCormick v. Obanion, 168 Mo.App. 606, 153 S.W. 267, 270; Jennings v. Overholt, 186 Mo.App. 505, 172 S.W. 449, 451; Jenkins v. Kay, Mo. App., 224 S.W. 1028; Axsom v. Thompson, 239 Mo.App. 732, 197 S.W.2d 326, 329, and cases cited.

4. Kyle v. Kansas City Life Ins. Co., 356 Mo. 331, 201 S.W.2d 912, 914; Le Compte v. Sanders, Mo.App., 229 S.W.2d 298; Harvey v. Francisco, Mo.App., 35 S.W. 2d 366, 368; Glassman v. Fainberg, Mo. App., 35 S.W.2d 950, 952.

must presume that plaintiff was the procuring cause of the fish's being on the stringer.

But there is a more cogent reason why appellants must fail. Here the action was based on a contract. Regardless of the soaring language sometimes used by the courts in respect to "procuring cause," the right to compensation must be governed by the contract.[5] This contract did *not* make the commission dependent upon the "procuring cause" but upon the fact that the broker "submitted" the property to the person who bought. It is conceded that plaintiff offered the house for sale to the Woolevers and showed them through it. The salesman used the term "submitted" in describing and defining these actions.

▮▮▮ There is a rule of construction which is that, if possible, meaning should be given to every word and phrase of a contract,[6] and we cannot ignore the clause in respect to payment of commission on sale made "to anyone to whom said property was submitted." There are numerous cases in the books in which there was dispute as the whether the broker had earned his commission by procuring a purchaser although the actual sale was not consummated until after the contract period. These cases necessarily raised various questions: whether the service was substantially completed during that period; whether there was fraud or interference on the part of the seller; whether the broker was the "pro-

curing cause"; whether the right to compensation was in fact conditional upon completion of the sale before the contract date; and whether the owner waived the contract time limit.[7] Is it not apparent that the parties wished to avoid possibility of such questions and disputes by fixing the conditions under which the compensation would be payable, and therefore agreed upon the provision for payment if the property had been submitted to a purchaser during the specified period? If we say that the broker must *still* have been the "efficient procuring cause," we have at the outset partially sterilized the word "submitted" and robbed it of a part of its meaning, and we have read into the contract a clause or condition which does not exist. To this we cannot agree.

Defendants-appellants, by their second contention, "submit" that the word "submitted" means that the efforts of the plaintiff to interest the Woolevers must have proceeded to the point where they were "likely purchasers." To this they cite four cases from other states,[8] none of them too similar on the facts. Without attempting to distinguish them individually, we observe that in each of them the contract expressly provided for commission to be payable if the sale was completed to a person with whom the broker had been "negotiating." In those and similar cases it is held generally that "negotiating" implies a situation where the interest of the buyer has been aroused to the point that the per-

5. Spitcaufsky v. Guignon Real Estate Co., Mo., 321 S.W.2d 481, and cases cited at page 487; Schaeffer v. Reineke, Mo.App., 121 S.W.2d 213, 219; Piper v. Allen, Mo. App., 219 S.W. 98; Wolcott v. Moser, 364 Mo. 443, 262 S.W.2d 620.

6. Cook v. Tide Water Associated Oil Co., Mo.App., 281 S.W.2d 415, and cases cited at footnote 9 of that case.

7. See Real Estate Enterprises v. Collins, Mo.App., 256 S.W.2d 286, 289; Choplin v. Francis, Mo.App., 181 S.W.2d 222; Doerflinger Realty Co. v. Fields, Mo. App., 281 S.W.2d 609; Page & Austin

v. Griffin, 71 Mo.App. 524, 529; La Force v. Washington University, 106 Mo.App. 517, 81 S.W. 209; Wolcott v. Moser, 364 Mo. 443, 262 S.W.2d 620.

8. Munson v. Furrer, 261 Wis. 634, 53 N.W. 2d 697; Delbon v. Brazil, 134 Cal.App. 2d 461, 285 P.2d 710; Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621; Werner v. Hendricks, 121 Pa.Super. 46, 182 A. 748.

On the subject of provision for commission on sales after the contract period has expired, see annotation at 27 A.L.R.2d, p. 1408, et seq.

son may be considered a likely purchaser.

Negotiation implies a discussion of terms, a bargaining. It is generally used in connection with the *consummation* of business matters (65 C.J.S., p. 1273), "to treat with a view to coming to terms." Webster's New International Dictionary, Second Edition. The very word carries the connotation of steps near to completion. Thus, one "negotiates" a contract, or a trade, or a treaty. It is farther down the road toward accomplishment than is "submit." One *submits* a proposition. Thereafter the other may "consider" it, and the parties may *negotiate* concerning it to a conclusion. Shakespeare said, "Let every eye negotiate for itself, and trust no agent." [9]

"The primary object in construing any instrument of this character is to ascertain the intention of the parties, and this almost necessarily requires an inquiry into the purpose which the parties sought to accomplish. Such purpose may be gathered not only from the particular clause or phrase under scrutiny but as it may be understood in the light of all other provisions of the instrument." [10] The ultimate purpose here sought to be accomplished was a sale. To accomplish that purpose it was to the interest of the owners to keep the broker actively searching for prospective buyers and on the job, even to the last minute of the term of his employment. They furthered this interest by agreeing to protect the broker in his compensation so that the broker would gamble his time by searching out and bringing in persons who might possibly be interested even though they might not then be considered likely prospects; or, even if they were so interested, there might not be time to complete the sale within the exclusive period.

The word "submit" means:

"To leave or commit to the discretion of another." Webster's New International Dictionary, Second Edition.

"To present for determination; to commit to the discretion or judgment of another." 83 C.J.S., p. 571; Black's Law Dictionary, Fourth Edition; see 40 Words and Phrases, p. 412.

Roget's International Thesaurus (763.2) treats the words "submit" and "offer" as synonymous.

In Doerflinger Realty Co. v. Fields, Mo. App., 281 S.W.2d 609, the contract was in language similar to the one with which we are concerned. The St. Louis Court of Appeals upheld the broker's right to commission when the owner accepted the prospects as purchasers by entering into contract with them, but the question we have was not raised or passed upon. A similar contract was involved in Harvey v. Riedlinger, La.App., 17 So.2d 60. There again the court upheld the right to commission but did so on the ground that the "extended" period gave an exclusive right of sale.

It is a close question whether the acts of the plaintiff went far enough to fulfill the terms of the contract, but we are of the opinion that under the facts of this case the plaintiff "submitted" the property to the purchasers within the exclusive period when he "offered defendants' property to the Woolevers for sale and took [them] through the house" in the presence of the defendants. At all events, the purchasers having completed an F.H.A. loan and taken over the property, all within a month after such submission, and there not having been shown any abandonment of the purchasers as prospects or any intervening cause which "procured" or "induced" them, it should be presumed that they were "likely purchasers."

The final contention is that the petition does not state a cause of action because it does not allege that the contract pleaded was performed or that plaintiff produced the Woolevers as buyers at the price fixed in the contract.

---

9. Much Ado About Nothing, Act II, scene 1, line 184.

10. Hanna v. Nowell, Mo.App., 330 S.W. 2d 595, 599, and citations under footnote 5 of that case.

This petition charged that the parties entered into the contract heretofore mentioned; that during the contract period "the property was shown" by plaintiff to the Woolevers and that within the 90-day period the property was purchased by Woolevers. The attack on the petition first comes on this appeal. In the lower court the defendants answered by stating that "plaintiff did not show or submit said above-described property to a purchaser nor procure a purchaser for said property prior to the expiration of said contract of March 2, 1958, on the terms therein authorized." On trial, the defendants introduced evidence in an endeavor to prove their answer allegations.

While it is true that if the petition states *no* cause of action the point can be raised at any time, nevertheless where *no* attack has been made in the trial court and the parties have tried the case on the supposed issues, then considerable liberality is applied in construing the petition and every intendment will be indulged in order to find or imply the allegations which made the issues so tried.[11] One reason for this rule is to prevent entrapment.[12]

While we do not recommend the petition as a form to be followed in any other case, we think that by liberal interpretation and fair implication it does state a cause of action. It does not plead that the purchaser produced was ready, willing, and able to buy, but we have held that this was not the test in this case. The petition *does* allege that Woolevers *did* buy within the extended period, and this of it-self carries at least the implication that the buyers were willing and able. The petition does not state that plaintiff "submitted" the property to Woolevers, but it does state that it was "shown" to them. It carries the implication that the property was submitted, especially in view of the fact that the unobjected testimony of plaintiff's witness makes the word "shown" almost synonymous with submitted. The defendants understood what plaintiff was striking at. In their answer they themselves supplied the word submitted and chose to make the failure to submit one of the issues.

Appellants rely upon Proctor v. Gentry, Mo.App., 214 S.W.2d 746. We are unable to find in that case any language which indicates the attack was not made in the circuit court. Furthermore, that case was one of conditional contract where the plaintiff was required to procure a buyer for more than $2,000 because the condition of the contract was that seller was to get $2,000 net.[13] Plaintiff pleaded that he priced the property at $2,200 but not that it was sold at that figure. In fact, the court referred back to the original petition and remarked that it showed a sale price of $2,000. The plaintiff thus did not plead facts bringing him within the conditions which required payment of his commission. In the case at bar the vital condition was that plaintiff submitted the property and that the prospect purchased.

The judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

11. Judge v. Durham, Mo.App., 281 S.W.2d 16; Nahn-Heberer Realty Co. v. Schrader, Mo.App., 89 S.W.2d 142; Major v. Berg, Mo.App.. 95 S.W.2d 861; Lavinge v. City of Jefferson, Mo.App., 262 S.W.2d 60, 62; Security Stove & Mfg. Co. v. American Railway Express Co., 227 Mo.App. 175, 51 S.W.2d 572.

12. Welker v. Pankey, Mo.App., 225 S.W. 2d 505, 507; Rogers v. Poteet, 355 Mo. 986, 199 S.W.2d 378.

13. For similar "conditional" contracts, see Hughes & Thurman v. Dodd, 164 Mo.App. 454, 146 S.W. 446; Clarkson v. Standard Brass Mfg. Co., 237 Mo.App. 1018, 170 S.W.2d 407.